

# ORIGINAL

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 7 2003

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLAVIA GROUP, INC., a California corporation, | CASE NO. CV 03-01796 RMT (Mcx) |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | |
| KINKO'S, INC., a Delaware corporation, | |
| Defendant. | |



ENTER ON ICMS

JUN 18 2003

This matter came before the court on the motion filed on May 12, 2003 by Plaintiff Flavia Group, Inc., for preliminary injunction.  The court, having considered the pleadings and oral argument presented on June 9, 2003, now determines:

## Findings of Fact

1.  Plaintiff Flavia Group, Inc. (hereinafter "Flavia"), is a California design company that develops, creates, and markets inspirational artwork, such as greeting cards and calendars.  Flavia has created and owns 11 designs that it has separately copyrighted.

2.  On July 7, 1994, Flavia entered into an agreement with Gibson Greeting Card

Company (hereinafter "Gibson"), pursuant to which by license Flavia gave Gibson the right to produce specialty paper that utilized the Flavia designs. By its terms, the Flavia/Gibson License Agreement expired on December 31, 2001.

3.   Defendant Kinko's, Inc. (hereinafter "Kinko's"), owns and operates many retail stores in California and around the United States, which provide document duplicating services and which sell inspirational artwork including greeting cards and calendars.

4.   The Flavia/Gibson License Agreement authorized Gibson to produce specialty paper using Flavia designs, and to supply them to Kinko's, and also provided that Flavia was to receive a royalty from Gibson based on the payments Kinko's made to Gibson. The Flavia/Gibson License Agreement was later amended on July 14, 1995 and November 1, 1995.

5.   Beginning in 1996, Kinko's entered into separate sublicense agreements with Gibson after which Kinko's used, modified, and sold Flavia's designs.

6.   Gibson was subsequently acquired by American Greetings. Pursuant to this acquisition, American Greetings is the successor in interest to Gibson's rights under the license with Flavia and the separate sublicense agreement with Kinko's. The sublicense agreement between Kinko's and American Greetings expired on December 31, 2001.

7.   In the summer of 2000, Kinko's represented and promised Flavia that through customer use it would test some designs of Flavia on "Kodak Picture Maker" machines, and if the tests proved successful would report that fact to Flavia, after which Flavia and Kinko's would enter into a license and royalty agreement. Flavia provided Kinko's with certain Flavia designs in Original High Resolution Digital File format. Kinko's then reported to Flavia that the test of customer use had not been successful, in terms of generating customer interest.

8.   In October 2000, and October 2001, Kinko's used Flavia designs on holiday promotional materials, cards, and calendar catalogs.

9.   On June 10, 2002, Roy Millender, President and C.E.O. of Flavia, sent Kinko's a cease-and-desist letter after discovering Kinko's use of its designs.   Kinko's immediately sought to remove any alleged Flavia designs from its stores and its 2002 holiday products catalog.

10.  Subsequently, on November 4, 2002, Mara Bosnak, designer for Flavia, ordered a box of holiday cards from a Kinko's store in Ventura, California, which she picked up on January 10, 2003.  The holiday cards used a Flavia copyrighted design, even after Kinko's had removed Flavia designs from its printed holiday catalog.

11.  On May 16, 2003, Millender visited a Kinko's store in Santa Barbara, California and requested to see the available card and calendar graphic designs.  Six of the graphic designs that were shown to Millender by a Kinko's employee were copyrighted Flavia designs.  Five of the designs that were being used incorrectly identified the designs as having been copyrighted by Kinko's, and a sixth correctly identified Flavia as holding the copyright, but stated that Kinko's was using it by permission.

If any finding of fact is deemed to be a conclusion of law, it is hereby incorporated into the Conclusions of Law section below.  If any conclusion of law is deemed to be a finding of fact, it is hereby incorporated into the Findings of Fact section above.

## Conclusions of Law

1.   The United States Supreme Court has recognized that a preliminary injunction is one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

2.   In the Ninth Circuit, the party seeking a preliminary injunction must show either: 1) a combination of probable success on the merits and the possibility of irreparable harm; or 2) that serious questions are raised and the balance of hardships tips in its favor. Brookfield Communications, Inc., v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm

1    increases as the probability of success decreases." <u>Prudential Real Estate</u>

2    <u>Affiliates, Inc., v. PPR Realty, Inc.</u>, 204 F.3d 867, 874 (9th Cir. 2000).

3    3.    Flavia asserts only the copyright infringement and the Lanham Act claims as the

4          basis for its application for a preliminary injunction, thus this court need only

5          consider these claims in determining whether to issue a preliminary injunction.

6    4.    To establish a successful copyright infringement claim, plaintiff must show that he

7          owns the copyright and that defendant copied protected elements of the work, and

8          plaintiff may establish copying by showing that the alleged infringer had access to

9          the work and that the two works are substantially similar. <u>Narrell v. Freeman</u>, 872

10         F.2d 907, 910 (9th Cir. 1987).

11   5.    Flavia has provided documentation that it owns the copyrights to 11 of its Flavia

12         designs, which were all registered on November 18, 2002.  Under 17 U.S.C. §

13         302(a), the operative date for copyright purposes is not the registration date but

14         "from its creation." Section 302(c) makes clear that "creation" means the first time

15         the work is fixed in a copy.  The first of the 11 Flavia designs was created on

16         January 24, 1994 and the eleventh design was created on March 1, 2000.

17   6.    Flavia has provided documentation that Kinko's had access to Flavia's specialty

18         paper products utilizing the Flavia designs since 1994 and had access to

19         electronic versions of certain Flavia designs under the Kodak Pilot Program in

20         2000.

21   7.    A review of the Flavia designs in comparison with Kinko's greeting cards,

22         calendars, and promotional materials reveals that substantial similarity is met. As

23         such, Flavia has shown that Kinko's copied protected elements of Flavia's designs.

24   8.    In response, Kinko's contends that the sale of cards and calendars with Flavia

25         designs is permitted under the first sale doctrine[1] because they were created prior

26   _____

27   [1] The "first sale" provision of the Copyright Act "restates and confirms the principal
     that, where the copyright owner has transferred ownership of a particular copy . . . of a work,
     the person to whom the copy . . . is transferred is entitled to dispose of it by sale . . . or any
28   other means."  Historical Notes to 17 U.S.C. § 109(a) (1977).

to December 31, 2001.  However, Kinko's is mistaken.  Entering a license agreement is not a "sale" for purposes of the first sale doctrine.  <u>Microsoft Corp. v. Harmony Computers & Electronics, Inc.</u>, 846 F. Supp. 208, 213 (E.D.N.Y. 1994) Under 17 U.S.C. § 202 (ownership of copyright as distinct from ownership of material object), the owner of a physical copy cannot reproduce the copyrighted work publicly without the copyright owner's consent.  In particular, the first sale doctrine only applies when the copyright holder sells the work in question; if the copyright holder sells a copyrighted work, he loses his right under copyright laws to control the subsequent distribution of that particular copy of work.  17 U.S.C. § 109(a), (d); <u>ISC-Bunker Ramo Corp. v. Altech, Inc.</u>, 765 F. Supp. 1310, 1331 (N.D. Ill. 1990) (holding that where plaintiff only licensed and did not sell its copyrighted software, the first sale doctrine has no application as a matter of law).  Here, there is a license agreement and not a purchase of the copyrighted designs, thus Kinko's should have ceased all use of Flavia Designs after December 31, 2001, which it has failed to do.

9.   Flavia has clearly shown the probability of success on the merits of its copyright infringement claim, and thus the court need not reach the Lanham Act claim.

DATED: _____6/16/03_____

ROBERT M. TAKASUGI
United States District Judge